UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                         Case No. 12-CR-165

JAMES L. VANDERKINTER,

    Defendant.

**ORDER DENYING MOTION TO SUPPRESS**

    This case presents the question of whether evidence of a crime obtained by an investigator with the Kewaunee County Sheriff's Department should be suppressed and barred from admission at the trial of Defendant James L. Vanderkinter. Vanderkinter is charged with illegally possessing eight firearms after having previously been convicted of a felony. As is the practice in this district, Vanderkinter's motion to suppress was referred to a magistrate judge for initial determination and recommendation. In a thorough and well-reasoned decision issued on September 25, 2012, the magistrate judge recommended that the motion be granted. The government filed an objection and the defendant filed a response. Having considered the entire record in the matter, including the briefs and recommendation, I now conclude that the motion should be denied.

**FACTS**

    The underlying facts of the case are set forth in the Deputy Reports of Kewaunee County Sheriff Investigator Steven G. Haen, which are attached to the Memorandum in Support of Motion

to Suppress, along with the Search Warrant Inv. Haen obtained and his supporting affidavit. (ECF No. 18.) These facts begin with a call to the Kewaunee County Sheriff's Department on or before June 14, 2012, by a woman named Gail who had been living in an apartment with Vanderkinter for a brief period of time when she was separated from her husband. Gail reported that Vanderkinter, a previously convicted felon, was in possession of firearms. Inv. Haen met with Gail and her husband, with whom she had reunited, at their home and interviewed her about the allegation that Vanderkinter was in possession of firearms.

Gail told Inv. Haen that she had worked with Vanderkinter at a Door County company and had become friends. After problems arose in her marriage, she moved out and rented an apartment in Algoma with Vanderkinter in mid-April 2012. She moved back with her husband on June 7, 2012. During the time she lived with Vanderkinter, Gail said he said some things that scared her. On June 11, 2012, Vanderkinter reported to the Door County Jail to begin serving a twenty-two day sentence for Operating While Intoxicated, and Gail had waited until he was in jail to tell law enforcement what he had said.

According to Inv. Haen's report, Vanderkinter told Gail that he had some firearms which he stored at "his 'Uncle Jack's place' which is an old barn, located on Rockledge Road." (ECF No. 18-1 at 2.) She had driven past the barn with Vanderkinter and he pointed out the barn where he stored his guns. She had never seen the guns herself, but she said she had seen two videos on Vanderkinter's cell phone that he had taken of himself with his eight-year-old son firing the guns. Gail stated that Vanderkinter was training his son to protect himself, taking him to martial arts classes and talking to him about killing people and using guns and knives to hurt them so they would never be able to get up. (*Id.*) Gail said that when he left with his son to go target shooting,

2

Vanderkinter told her not to say anything to anyone about it. Later, Gail told Inv. Haen that "there is an old red jeep that sits behind the barn," and they determined that "Uncle Jack" was John Bellin, who owned the property. (*Id.*) Finally, Gail told Inv. Haen that Vanderkinter had talked about an arson to a vehicle he was suspected of and of damaging some of her husband's vehicles. Gail said she was afraid of Vanderkinter and of what he would do when he was released from jail.

After his interview of Gail, Inv. Haen proceeded to the Rockledge Road location to take some photographs. Several days later on June 18, 2012, Inv. Haen met with an assistant district attorney for Kewaunee County to prepare an application for a search warrant. According to his report, Inv. Haen assisted the assistant district attorney in preparing an affidavit in support of a search warrant. The affidavit was "in support of searching the barn and all other buildings at E2897 Rockledge Road address, and also a maroon colored SUV that was parked on that property and was believed to belong to James Vanderkinter." (ECF No. 18-3 at 1.) When the affidavit was completed, Inv. Haen and the assistant district attorney signed it. Inv. Haen then met with the Kewaunee County Circuit Court Judge who reviewed the affidavit and signed the warrant. The warrant authorized Inv. Haen to search "certain premises in the Town of Casco, Kewaunee County, Wisconsin, a barn and accessory structures owned by John and Jeanette Bellin, more particularly described as a large old barn with a red/maroon SUV parked in the rear with accessory buildings located at E2897 Rockledge Road, Town of Casco, Kewaunee County." (ECF No. 18-2 at 1.)

Inv. Haen then met with John Bellin, a/k/a Uncle Jack, at his home and advised him of the warrant and his plans to search the property. Bellin confirmed that he owned the property and that Vanderkinter stored some of his property "out at the barn." (*Id.*) Bellin stated that he was not actually Vanderkinter's uncle but he agreed to let him store some of his things at the farm after

3

Vanderkinter had been kicked out of the place where he had been living. Vanderkinter had paid him about $21 in rent so far, but was long overdue.

Bellin also told Inv. Haen that the older maroon SUV belonged to Vanderkinter and had been there for a year-and-a-half to two years. At one point the vehicle had been removed, but it was then returned and had remained. It was locked, and Bellin said he did not have the keys. Inv. Haen looked inside the vehicle and noticed that the back seat was down and there was a blue tarp covering the cargo area. Assisting officers used a specialized device to unlock the door to the SUV and lifted the tarp. Underneath they found multiple firearms and ammunition. Law enforcement later searched the barn and found several boxes of property belonging to Vanderkinter, but no firearms or other contraband. Based on the firearms that were found, Vanderkinter was indicted on a charge of possession of firearms by a felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). The motion before the Court seeks suppression of the use of the evidence obtained from his SUV.

## ANALYSIS

**A. Scope and Validity of Warrant**

Vanderkinter argues that evidence of the firearms must be suppressed because the warrant did not authorize Inv. Haen to search the maroon SUV in which they were found. The warrant authorized Inv. Haen to search only the barn and, perhaps, the accessory buildings. Although the maroon SUV is named in the warrant, Vanderkinter argues that it is included only as a means of more particularly describing the barn to be searched, i.e., the one with the red/maroon SUV parked in back. Because Inv. Haen's search of the SUV exceeded the scope of the search authorized by the

4

warrant, he argues, the evidence obtained thereby must be suppressed. The magistrate judge agreed with Vanderkinter that it was clear from ordinary rules of grammar that the warrant did not authorize a search of the SUV.

I conclude that the warrant is ambiguous as to whether it included the SUV as a place to be searched. The contention that the SUV was listed simply as a way of further describing the barn to be searched, while perhaps grammatically more correct, makes little sense. Having provided the street address, there was no need to add the fact that an SUV was parked in the rear as a further description. Nor would a reasonable officer have used its proximity to the barn to further describe the structure that was to be searched. Had the SUV been moved, would the defendant be able to argue that the barn was not covered? Instead, it appears that the SUV was listed, like the accessory buildings and the barn itself, as places on the premises in which the guns might be found. Indeed, the affidavit mentions the "red/maroon SUV" or "old red jeep" behind the barn in two places. Gail stated that "there is an old red jeep that sits behind the barn," and Inv. Haen confirmed that he observed "a red/maroon SUV parked behind the barn" when he drove there after interviewing Gail. (ECF No. 18-2 at 3.) Although the date of Gail's observations is not set out in the warrant, it appears from the fact that she lived with him from mid-April to early June that it was at least several weeks earlier. Since no one lived at "Uncle Jack's place" (there was no farm house), the fact that an old SUV or jeep "sits behind the barn" suggests that it was more like a fixture to the property where items might be stored than a motor vehicle that was regularly used.

This seems to have been the understanding of Inv. Haen. He specifically requested authority to search the SUV in the affidavit filed in support of the warrant. (*Id.*) His report of his meeting

5

with the assistant district attorney also states that the affidavit was "in support of searching the barn and all other outbuildings at E2897 Rockledge Road address, and also a maroon colored SUV that was parked on that property and was believed to belong to James Vanderkinter." (ECF No. 18-3 at 1.) And when he arrived at the property, it was the first place he looked. Had Inv. Haen not thought the warrant authorized him to search the SUV, his affidavit, reports and conduct would have been very different.

In light of these facts, I have no difficulty in concluding that Inv. Haen reasonably believed that the warrant authorized him to search the SUV. If that is the case, then to the extent that Vanderkinter's motion challenges the search as exceeding the scope of the warrant, it must be denied. For while "an executing officer must interpret a warrant's terms reasonably, . . . the officer need not give them the narrowest possible reasonable interpretation." *United States v. Aljabari*, 626 F.3d 940, 947 (7th Cir. 2010). Even if evidence is discovered in an area later determined to be outside the warrant's scope, suppression will not be appropriate if, "in light of the circumstances presented at the time of the search and the limitations in the warrant, the execution of the search in that area was reasonable." *Id.*; *see also United States v. Funderwhite*, 148 F.3d 794, 797 (7th Cir. 1998) (upholding search of van because law enforcement officers "had an objectively reasonable, good-faith belief that the judge had . . . authoriz[ed] such a search").

Vanderkinter also argues, however, that to the extent the warrant did authorize a search of the SUV, it was invalid because the affidavit on which the warrant was issued contains no facts sufficient to establish probable cause for such a search. According to the affidavit, Vanderkinter told Gail that he stored his guns in the barn. Because, according to her account, he only said he stored them in the barn, Vanderkinter argues there was no probable cause to search anywhere else. Thus,

6

even if the warrant can be construed to extend to the SUV, Vanderkinter argues the search was nevertheless unlawful.

But it is less than clear what Gail or Vanderkinter, assuming their statements are accurately recounted in the affidavit, meant by them. Gail said Vanderkinter told her "he stores his firearms at 'Uncle Jack's place' which is an old barn, located on Rockledge Road." (ECF No. 18-2 at 2.) She also said that "they had driven past the barn on Rockledge Road and he [Vanderkinter] pointed out to her that that was the barn where he keeps his guns." (*Id.*) The defendant argues, and the magistrate judge agreed, that because the statement recounted by Gail was that Vanderkinter stored his guns in the barn, that was the only place a warrant could lawfully authorize Inv. Haen to search. But this assumes that the statements were made and recounted with a greater precision than one would ordinarily expect under the circumstances.

Based on the description of "Uncle Jack's place" in the warrant and supporting affidavit, the barn was the most prominent building at the site. The farmhouse was gone, and the remaining structures were accessory buildings. It would therefore be reasonable to refer to the location as "the barn," just as a person generally refers to the property on which he lives as his home. To say "I keep my '57 Chevy at home" tells you that I keep my antique car on the property on which my home is located. But it does not tell you where on that property the car is located. It could be in an attached garage, or an old barn in back. The point is that Vanderkinter's argument rests on an assumption that Vanderkinter or Gail or both were using a degree of precision in describing where the guns were kept that people don't generally use in everyday language. Absent this assumption, Gail simply was told that Vanderkinter keeps his guns at "Uncle Jack's place." If that is true, then the warrant

7

authorizing a search of the various locations at "Uncle Jack's place" where guns would likely be stored, i.e., the accessory buildings and the SUV, as well as the barn, would be valid.

It should also be noted that, as a general rule, law enforcement officers may search a motor vehicle that is located on a premises a warrant authorizes them to search, even if it is not identified in the warrant, assuming the motor vehicle is owned by, or under the control of, the person who owns or rents the premises and who is the target of the search. As Professor LaFave notes in his authoritative treatise on the Fourth Amendment, "It has often been held that a search warrant authorizing the search of a certain premises covers automobiles found on those premises, provided of course that the place searched in the vehicle could contain one of the items described in the search warrant." 2 Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.10(c), p. 749 (4th ed. 2004). The rule is commonly applied when an automobile is found in a garage on the premises. *See, e.g., United States v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996) ("It seems to us that a car parked in a garage is just another interior container, like a closet or a desk. If, as in this case, the trunk or glove compartment is not too small to hold what the search warrant authorizes the police to look for, they can search the trunk and the glove compartment."). But it also applies when the vehicle is off the street next to the house and not in a garage. *See United States v. Freeman*, 685 F.2d 942, 955 (5th Cir. 1982) ("Here we think that the warrant for a search 'on the premises known as 256 Seadrift Road' was sufficiently particular to permit a search of Boese's Jeep similarly parked on the premises off the street and close to the house.").

The rule seems reasonable if the vehicle found on the premises is owned by the person who is the target of the search. This is true even if there is no direct evidence that the evidence or contraband sought would be found in the vehicle. If police have probable cause to believe an

8

individual is in possession of evidence or contraband, then it is reasonable to infer that it will be found in a place within his control. *See Aljabari*, 626 F.3d at 945 ("Simple common sense supports the inference that one likely place to find evidence of a crime is the suspect's home, at least absent any information indicating to the contrary."). Thus, where a warrant authorizes law enforcement to search a premises owned or rented by an individual who police have probable cause to believe is in possession of evidence of a crime or contraband of a type that is likely to be kept in a secure place not accessible to others, the warrant is generally held to extend to motor vehicles owned by such individual that are located on the premises. *See United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985) ("We therefore agree with other courts that have addressed this issue and hold that a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises.").

Of course, this rule only makes sense for vehicles found on the premises to be searched that are owned by or under the control of the individual believed to have possession of the evidence or contraband sought. "[A] warrant for a certain house does not cover the automobile of a visitor there who has parked his car in the driveway." LaFave, *supra*, at p. 751. And the better practice is certainly "to include a description of the occupant's vehicle in the warrant when the warrant is intended to extend to the car." *Percival*, 756 F.2d at 612 (citing 2 LaFave, § 4.10 at p. 159 (1978)). That is what Inv. Haen apparently attempted to do here. Vanderkinter nevertheless argues that the warrant is invalid to the extent it authorizes a search of the SUV because Inv. Haen failed to include in his affidavit any information about the maroon SUV that would have supported a finding of probable cause that the guns might be found in it. I reject this argument for the reasons explained above. But even if Vanderkinter was right, the fact that the affidavit failed to establish probable

9

cause to search the SUV in particular would only be a problem if the warrant did not otherwise extend to the SUV under the general rule described above.

A reasonable argument exists that it would not. One could argue that absent probable cause as to the SUV, the warrant would not authorize the search of the entire premises at E2897 Rockledge Road, but only the barn and the accessory buildings. The term "premises" is defined by BLACK'S LAW DICTIONARY as "a house or building, along with its grounds." BLACK'S LAW DICTIONARY 1199 (7th ed. 1999). Where the search authorized is limited to certain buildings located on a premises, one could argue that it does not authorize a search of motor vehicles that are not inside the building. *See United States v. Barth*, 288 F. Supp.2d 1021, 1027 (D. N.D. 2003) ("By definition, a search of the "premises" is more expansive than a mere search of a building in that it would encompass the building and its grounds.").

One could also argue, however, that such a reading is overly technical and not consistent with Seventh Circuit law on the subject. The warrant's description of the place to be searched includes the street address for the property as well as a more particular description of the buildings to be searched: "a large old barn with a red/maroon SUV parked in the rear with accessory buildings . . . ." (ECF No. 18-2 at 1.) To hold that by including a more particularized description of the premises to be searched, law enforcement actually narrowed its scope from what it would otherwise be would seem unreasonable.

In *United States v. Griffin*, 827 F.2d 1108 (7th Cir. 1987), the Seventh Circuit addressed a similar issue. In that case, law enforcement officers seeking evidence of the crime of manufacturing PCP (Phencyclidine) obtained a warrant for a premises described as "one red, one story framed house with white trim at the address 5311 East 13th Avenue, Gary, Indiana, with a detached garage,

10

red with white trim in the Northern District of Indiana." *Id.* at 1113. In executing the warrant, the officers also seized items from soil and rock in the back yard, a toolshed and an automobile in the driveway. The defendant argued on appeal that the officers had exceeded the warrant and the evidence obtained from the places not specifically listed in the warrant should have been suppressed. The court found the search of the car "problematic" but found it unnecessary to decide whether it was constitutional because the government had not introduced at trial any evidence taken from the car. As to the other areas not specified in the warrant, however, the court rejected the defendant's argument noting that "the specific mention of the 'house' and the 'garage' does not limit the scope of the search to those specific areas, but instead makes the premises to be searched more readily identifiable." *Id*. at 1115. The court recognized that "[h]ad the warrant expressly limited the search to 'the bedroom closet or a green painted cabinet located on the premises known as 5311 East 13th Avenue' specifically limited to 'the attic at the premises known as 5311 East 13th Avenue,' Griffin's argument might conceivably have merit." *Id.* But the court concluded that the scope of the warrant "was not limited by the absence of a specific reference in the warrant to each and every building on the 'premises' and the location of each spot the Government agents dug up." *Id.*

This case is somewhat complicated by the fact "Uncle Jack's place" consisted of the remains of a farm. The farmhouse was no longer standing, and the only buildings left were an old barn and some accessory buildings. In addition, Vanderkinter did not own the property or live there. Instead, it appears he gave Bellin a small amount of money for permission to store his possessions there. Moreover, according to Inv. Haen's affidavit in support of the warrant, Vanderkinter told Gail sometime within the last two months that the guns were in the barn. These facts led the magistrate judge to conclude that the warrant was limited to the barn and perhaps the accessory buildings.

11

Thus, despite the fact that the SUV was owned by Vanderkinter and it was parked next to the barn, the magistrate judge concluded that it was not within the scope of the warrant. In effect, the magistrate judge concluded that the warrant was limited to the barn, and perhaps the accessory buildings, but certainly not the SUV owned by Vanderkinter that was parked nearby.

For the reasons already stated, I conclude that this reading of the warrant is unreasonably narrow, and the warrant expressly authorized a search of the SUV. But even if Vanderkinter's reading of the warrant were correct, in light of the general rule that a warrant authorizing the search of a premises extends to a motor vehicle that is located on the premises and that is owned by the person believed to be in possession of the evidence or contraband sought, I conclude that Inv. Haen's search of the SUV would have been lawful under the warrant. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). Certainly, Vanderkinter's SUV was an area on the premises in which the guns that were the object of the search could be found. Inv. Haen's search of the SUV which was specifically identified in the warrant was therefore lawful.

**B. Good Faith**

Alternatively, the government argues that if the search of the SUV exceeded the search authorized by the warrant, the motion to suppress should still be denied because Inv. Haen acted in good faith in conducting the search. In *Massachusetts v. Sheppard*, the Supreme Court held that the evidence should not be suppressed even if there are flaws in the warrant authorizing the search when "the officers reasonably believed that the search they conducted was authorized by a valid

12

warrant." 468 U.S. 981, 988 (1984). More generally, the Court has noted that the sole purpose of the exclusionary rule is to deter Fourth Amendment violations and that "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)). This is because of the heavy societal costs that result from exclusion:

> Exclusion exacts a heavy toll on both the judicial system and society at large . . . . It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.

*Davis*, 131 S. Ct. at 2427 (internal citations and quotations omitted).

Here there exist a number of factors showing that Inv. Haen was acting in good faith. The very fact that Inv. Haen sought a warrant is evidence that he was acting in good faith. *See United States v. Leon*, 468 U.S. 897, 920-21 (1984). The fact that he worked with an assistant district attorney in preparing the warrant also supports a finding that Inv. Haen was acting in good faith. *See United States v. Merritt*, 361 F.3d 1001, 1012 (7th Cir. 2004) (noting that "where the issue is whether probable cause existed, Agent Vergon's consultation with the AUSA particularly supports the finding that his reliance upon the warrant was objectively reasonable"), vacated on other grounds, 543 U.S. 1099 (2005). As explained above, it is also clear that Inv. Haen actually believed the SUV was covered by the warrant. In light of these facts, and given the general rule that a warrant typically includes motor vehicles owned by the target of the search that are parked on the premises to be searched and the fact that the maroon SUV was specifically listed in the warrant, I conclude that Inv. Haen's belief that the SUV was within the scope of the warrant was not unreasonable.

13

Even if his belief was in error, his good faith preserves the fruits of the search. There is no evidence of police misconduct here that invocation of the exclusionary rule would serve to deter.

In rejecting the government's argument that the good faith exception applied, the magistrate judge concluded that even though suppression should be the last resort, it was justified here because the "officers sought a warrant to include the SUV, were denied, but undertook that broad search anyway." (Recommendation 9, ECF No. 22.) The magistrate judge noted that "this is not the kind of conduct that can be condoned or overlooked," and that "it cuts to the heart of what the Fourth Amendment exists to protect." (*Id.*) In essence, the magistrate judge concluded that the "law enforcement officers undertook a warrantless search of a vehicle without probable cause." (*Id.*) For this reason, he concluded the good faith exception did not apply and recommended that defendant's motion to suppress be granted.

If, in fact, Inv. Haen had sought and been denied a warrant to search the SUV, and had undertaken to conduct such a search anyway, I would agree with the magistrate judge's recommendation. But for the reasons already stated, I do not so find based on the record before me. I find, at worst, an ambiguous warrant that Inv. Haen reasonably believed gave him the very authority he had requested, namely, to search the barn, accessory buildings, and SUV located at E2897 Rockledge Road in the Town of Casco, Kewaunee County, Wisconsin for firearms unlawfully possessed by the defendant. There is no evidence that the state judge who issued the warrant told Inv. Haen that the warrant did not cover the SUV and accessory buildings it listed. To be sure, the warrant is poorly worded, and violates basic rules of grammar, for which the assistant district attorney who drafted it would seem to bear primary responsibility. But the exclusionary rule is intended to deter violations of an individual's constitutional rights, not inadvertent violations of

14

the rules of grammar. I therefore conclude that even if the warrant did not cover the SUV or was invalid as to the search of that vehicle, the good faith exception would apply. For this reason, as well, the motion to suppress will be denied.

**SO ORDERED** this   17th   day of October, 2012.

 s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

15

Case 1:12-cr-00165-WCG   Filed 10/17/12   Page 15 of 15   Document 26